IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| NB LOFT VUE, DST, *ET AL.*, | § | Case No. 21-32292 |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of NB Loft Vue, DST ("Loft Vue") and NB Vue Mac, DST ("Vue Mac," and together with Loft Vue, the "Debtors"), pursuant to sections 105, 361, 362, 363, and 507 of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 4001-1 and 4002-1 of the Bankruptcy Local Rules for the Southern District of Texas ("Bankruptcy Local Rules"), and the Complex Case Procedures in the Southern District of Texas, for entry of an interim order (the "Interim Order") (i) authorizing the Debtor to use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), (ii) granting adequate protection to the Lender (as defined below), (iii) scheduling a final hearing (the "Final Hearing") on the Motion and approving the form and manner of notice thereof, and (iv) granting such other and further relief as the Court deems just and equitable; the Court having reviewed Motion and the (a) Declaration of Patrick Nelson filed in support of the Motion and (b) *Declaration of Patrick Nelson in Support of Chapter 11 Petition and First Day Pleadings* both filed contemporaneously with the Motion, and the evidence submitted or adduced

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

5222102.1

and the arguments of counsel made at the interim hearing held on July __, 2021 (the "Interim Hearing"); and the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2), and that the Debtors consent to entry of a final order under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, the estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given under the circumstances, and that no other or further notice of the Motion is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore:

**IT IS HEREBY FOUND AND CONCLUDED THAT:**[2]

A.  On July 6, 2021 (the "Petition Date"), the Debtors each commenced a voluntary case (the "Chapter 11 Case") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

B.  Loft Vue hereby stipulates and agrees that (collectively, the "Loft Vue Stipulations"):

1.  Loft Vue is the borrower under that certain *Multifamily Loan and Security Agreement* (the "Loft Vue Loan Agreement"), dated as of September 30, 2016, with Berkeley Point Capital, LLC as original lender and servicer, in the original principal amount of $10,712,000.00. This loan is evidenced by that certain *Multifamily Note* (the "Loft Vue Note"),

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  Pursuant to Bankruptcy Rule 7052, to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

also dated as of September 30, 2016, and is secured by that certain *Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing* ("Loft Vue Security Agreement"), recorded at Instrument Number D216230304 with the Tarrant County, Texas recorder, covering the Loft Vue Facility's real and personal property. The foregoing loan and security documents were assigned to Fannie Mae (the "Lender" or "Fannie Mae").

2. On May 8, 2020, Loft Vue entered into that certain Forbearance Agreement ("Loft Vue Forbearance Agreement") with Fannie Mae.

3. On November 1, 2020, Loft Vue entered into that certain Loan Modification Agreement (the "Loft Vue First Modification") with Fannie Mae, Nelson Brothers Professional Real Estate, LLC, Patrick Nelson, and Brian Nelson.

4. On January 5, 2021, Loft Vue entered into that certain Forbearance and Second Loan Modification Agreement (the "Loft Vue Second Modification") with Fannie Mae, Nelson Brothers Professional Real Estate, LLC, Patrick Nelson, and Brian Nelson.

5. The Loft Vue Loan Agreement, Loft Vue Note, Loft Vue Security Agreement, Loft Vue First Modification, and Loft Vue Second Modification, along with all other related agreements, are collectively defined as the "Loft Vue Loan Documents".

6. As of the Petition Date, Fannie Mae asserts that Loft Vue's obligations to Fannie Mae totaled approximately $13,265,572.70 (the "Loft Vue Secured Obligations"), inclusive of accrued and unpaid interest, attorneys' fees and costs, and also inclusive of an asserted prepayment premium of $2,056,929.16 (the "Loft Vue Prepayment Premium"). As further provided below, the Debtors and Fannie Mae reserve all rights and arguments related to the enforceability of the Loft Vue Prepayment Premium.

3

5222102.1

7. Pursuant to the Loft Vue Loan Documents, the Loft Vue Secured Obligations are secured by valid, binding, perfected first-priority security interest in and liens (the "Loft Vue Prepetition Liens") on substantially all real and personal property assets of Loft Vue (the "Loft Vue Collateral").

8. Loft Vue holds cash in three accounts held at Citizens Community Bank: an operating account ending in 3452; a security deposits and sources and uses account ending in 3657; and a distributions account ending in 3797.

9. All of Loft Vue's cash as of the Petition Date constitutes Cash Collateral of the Lender.

C. Vue Mac hereby stipulates and agrees that (collectively, the "Vue Mac Stipulations"):

10. Vue Mac is the borrower under that certain *Multifamily Loan and Security Agreement* (the "Vue Mac Loan Agreement"), dated as of December 18, 2015, with Berkeley Point Capital, LLC as original lender and servicer, in the original principal amount of $23,265,000.00. This loan is evidenced by that certain *Multifamily Note* (the "Vue Mac Note"), also dated as of December 18, 2015, and is secured by that certain *Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing* ("Vue Mac Security Agreement"), recorded at Instrument Number 20150570034 with the Harris County, Texas recorder, covering the Vue Mac Facility's real and personal property. The foregoing loan and security documents were assigned to Fannie Mae.

11. On May 8, 2020, Vue Mac entered into that certain Forbearance Agreement ("Vue Mac Forbearance Agreement") with Fannie Mae.

4

12. On November 1, 2020, Vue Mac entered into that certain Loan Modification Agreement (the "Vue Mac First Modification") with Fannie Mae, Nelson Brothers Professional Real Estate, LLC, Patrick Nelson, and Brian Nelson.

13. On January 5, 2021, Vue Mac entered into that certain Forbearance and Second Loan Modification Agreement (the "Vue Mac Second Modification") with Fannie Mae, Nelson Brothers Professional Real Estate, LLC, Patrick Nelson, and Brian Nelson.

14. The Vue Mac Loan Agreement, Vue Mac Note, Vue Mac Security Agreement, Vue Mac First Modification, and Vue Mac Second Modification, along with all other related agreements, are collectively defined as the "Vue Mac Loan Documents".

15. As of the Petition Date, Fannie Mae asserts that Vue Mac's obligations to Fannie Mae totaled $28,417,788.56, inclusive of accrued and unpaid interest, attorneys' fees and costs, and after offset of certain escrowed funds, and also inclusive of an asserted prepayment premium of $4,719,644.00 (the "Vue Mac Prepayment Premium"). As further provided below, the Debtors and Fannie Mae reserve all rights and arguments related to the enforceability of the Vue Mac Prepayment Premium.

16. Pursuant to the Vue Mac Loan Documents, the Vue Mac Secured Obligations are secured by valid, binding, perfected first-priority security interest in and liens (the "Vue Mac Prepetition Liens") on substantially all real and personal property assets of Vue Mac (the "Vue Mac Collateral").[3]

---

[3] The Vue Mac Collateral and Loft Vue Collateral are collectively defined herein as the "Prepetition Collateral." The Vue Mac Prepetition Liens and Loft Vue Prepetition Liens are collectively defined herein as the "Prepetition Liens." The Vue Mac Secured Obligations and Loft Vue Secured Obligations are collectively defined herein as the "Prepetition Secured Obligations." The Vue Mac Prepayment Premium and the Loft Vue Prepayment Premium are collectively defined herein as the "Prepayment Premiums."

5222102.1

17. Vue Mac holds cash in four accounts held at Citizens Community Bank: an operating account ending in 7614; a security deposit account ending in 7665; a distributions account ending in 1972; and a sources and uses account ending in 1778.

18. All of Vue Mac's cash as of the Petition Date constitutes Cash Collateral of the Lender.

D. The Debtors require the use of Cash Collateral to fund their chapter 11 cases, absent which immediate and irreparable harm will result to the Debtors, their estates and creditors. Absent the use of Cash Collateral, it would be impossible for the Debtors to conduct a reorganization of their liabilities and business affairs that preserve and maintain—to the greatest extent possible—the value of the Debtors' assets for the benefit of creditors. The Debtors do not have enough sources of working capital and financing to operate their businesses without the use of Cash Collateral. Accordingly, entry of this Interim Order is in the best interests of the Debtors, their estates and creditors.

E. The Lender and the Debtors have negotiated at arm's length and in good faith regarding the Debtors' use of Cash Collateral to fund the operation of the Debtors' businesses during the Specified Period (as defined below) in accordance with the budgets attached hereto as **Exhibit A** (the "Budget").[4]

F. The Lender does not object to the Debtors' proposed use of Cash Collateral on the terms and conditions set forth in this Interim Order.

---

[4] As of the date of filing of the Motion, the Debtors and Fannie Mae have a handful of open issues that they continue to negotiate concerning the Interim Order. To the extent that such issues are resolved in advance of or at the interim hearing, the Debtors intend to submit an agreed order. To the extent that such issues are not resolved, the Debtors will request the Court's intervention at the interim hearing.

G. At the Final Hearing, notice of which will be provided in accordance with this Interim Order, the Debtors will seek final approval of the relief requested in the Motion for the proposed use of Cash Collateral on a final basis pursuant to a final order (the "Final Order").

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Objections Overruled. The Motion is GRANTED, and the Debtors' use of Cash Collateral on an interim basis is hereby authorized, subject to the terms and conditions set forth in this Interim Order. The Debtors shall not use any Cash Collateral except as expressly authorized and permitted herein or by subsequent order of the Court. All objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

2. Use of Cash Collateral. Each Debtor is authorized to use Cash Collateral in their accounts for the period (the "Specified Period") from the Petition Date through the Termination Declaration Date (as defined herein) solely for purpose of funding the ordinary and necessary costs of operating and maintaining their respective businesses and in strict compliance with the Budget; provided, however, that the Specified Period may be extended with the prior written agreement of the Lender. For the avoidance of doubt, each Debtor is not authorized to use Cash Collateral in the security deposit accounts. With the exception of Chapter 11 quarterly fees, the Debtors will obtain Lender's prior written consent before paying any item of expense that exceeds 10% of the amount listed on the Budget. The Budget may be amended or supplemented with the written consent of the Lender and the Debtors and without further order of this Court; provided that a copy of such amended Budget shall be promptly filed after such amendment on the docket of this case. Lender has reserved the right to object to any applications to this Court to approve the professional fees and expenses of the Debtors' attorneys (which the Debtors' attorneys shall file in accordance with the Bankruptcy Code). The Debtors will segregate and separately account for all income, receipts,

receivables and all forms of Cash Collateral relating to the Collateral.  Debtors will maintain detailed records of its receipts and disbursements and will provide Lender with monthly reports of the same, with a comparison of budgeted to actual results, on or before the 20th day of the following month. Debtors shall ensure that no Cash Collateral will be used for purposes unrelated to operations of the business of the Debtors and the Facilities; instead, Cash Collateral shall be used to pay expenses within the Budget necessary to preserve and maintain the Debtors' property and operate the business of the Debtors and the Facilities in accordance with Section 363(b) of the Bankruptcy Code.

3. Adequate Protection. As adequate protection, the Lender, is hereby granted, solely to the extent of any diminution in value of the Lender's interests in the Prepetition Collateral from and after the Petition Date resulting from, among other things, the use of Cash Collateral, the use, sale, lease, consumption, or disposition of the Collateral, or the imposition of the automatic stay (collectively, the "Diminution in Value"), the following (such adequate protection as set forth in clauses (a)-(e) below, the "Adequate Protection Obligations"):

(a) Adequate Protection Liens. As adequate protection of the interests of the Lender in the Collateral against any Diminution in Value of such interests, pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Lender is hereby granted, solely to the extent of any Diminution in Value, continuing valid, binding, enforceable, non-avoidable, and automatically perfected postpetition replacement security interests in and liens (the "Adequate Protection Liens") on, subject only the Carve-Out, all of the Collateral and the proceeds and products thereof, whether such property and assets were acquired by the Debtors before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located (collectively, together with the Prepetition Collateral and the Cash Collateral, the "Collateral") to the same extent, validity and priority of the liens and security interests pursuant to the Loft Vue Loan Documents and Vue Mac Loan Documents, respectively. The Adequate Protection Liens shall be enforceable against each Debtor, their estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in this Chapter 11 Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of this Chapter 11 Case, upon the dismissal of this Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (collectively, "Successor

8

Cases"). For the avoidance of doubt, the Adequate Protection Liens shall be deemed to be effective and perfected automatically as of the Petition Date and without the necessity of the execution by either Debtor, or the filing of, as applicable, mortgages, security agreements, pledge agreements, financing statements, state or federal notices, recordings, or other agreements and without the necessity of taking possession or control of any Collateral.

(b) Adequate Protection Superpriority Claim. To the extent the Adequate Protection Liens do not adequately protect against the Diminution in Value of the Lender's interest in the Prepetition Collateral, as further adequate protection against any Diminution in Value of the interests of the Lender, the Lender is hereby granted as and to the extent provided by section 503(b) and 507(b) of the Bankruptcy Code allowed superpriority administrative expense claims in the Chapter 11 Case (the "Adequate Protection Superpriority Claim"), subject to any Carve-Out, which shall be payable from all Collateral and the proceeds thereof.

(c) The Debtors agree to provide, or cause the applicable property manager of the Facilities to provide, the following monthly financial reporting to Lender, beginning on August 20, 2021, for the period from the Petition Date through July 31, 2021, and continuing on the twentieth (20th) day of each successive month for the period covering the immediately preceding month: Budget results, including specification of any variances, in a form reasonably acceptable to Lender; a balance sheet for the Debtors; Debtors' Chapter 11 monthly operating reports; list of aged (30 days, 60 days, 90 days, 120 days, 120+ days) receivables for each Facility from any source; reconciled bank statements; statement of cash on hand, including all bank accounts; current listing of the Debtors' scheduled debt, including principal outstanding, interest rate, payment terms and maturity date (if any); a rent roll and a leasing report; a status update on the Vue Mac Insurance Claim (as defined below); and any and all other documents reasonably requested by Lender.

(d) Vue Mac agrees to diligently pursue the insurance claim filed by the Lender's servicer in connection with damage that occurred at the Vue Mac Facility in February 2021 (the "Vue Mac Insurance Claim"). The Debtors agree that the Adequate Protection Liens shall attach to any proceeds payable on account of the Vue Mac Insurance Claim. The Debtors will not use or expend such proceeds absent the Lender's consent.

(e) The Debtors will commence efforts to market the Collateral for sale by auction and/or refinance the Loft Vue and Vue Mac Secured Obligations, and, in connection with such efforts, comply with the following deadlines (the "Milestones"):

(i) By July 30, 2021, Debtors will file a retention application seeking entry of an order, with terms and substance reasonably acceptable to Lender,

        authorizing the employment of a broker to market the sale of substantially all of the Collateral or to identify suitable replacement lenders (the "<u>Broker</u>").

(ii)    By August 20, 2021, Debtors will obtain entry of an order (the "<u>Bid Procedures Order</u>"), with terms and substance reasonably acceptable to Lender, approving bid and sale procedures for the sale of substantially all of the Collateral, which shall preserve the right of Lender to credit bid all or any part of the Prepetition Secured Obligations (solely to the extent the same are secured by the assets being sold) in connection with any proposed sale, and which may include (but shall not be required to include) approval of a stalking horse asset purchase agreement and related bid protections.

(iv)    By October 29, 2021, Debtors will conduct an auction for substantially all of the Collateral, unless the Debtors elect instead to seek a refinancing of the Loft Vue and/or Vue Mac Secured Obligations.

(v)    By November 5, 2021, Debtors will obtain entry of an order of the Court, with terms and substance acceptable to Lender, approving the sale of substantially all of the Collateral or a refinancing of the Loft Vue and/or Vue Mac Secured Obligations (whether through an order pursuant to Section 363 of the Bankruptcy Code or confirmation of a chapter 11 plan with terms and substance acceptable to Lender).

(vi)    By November 22, 2021, consummate the sale of substantially all of the Collateral or a refinancing of the Loft Vue and/or Vue Mac Secured Obligations.

The Debtors further agree to provide to the Lender regular weekly updates on their sale/refinancing efforts through calls with the Debtors' broker.

4.    <u>Termination Events</u>. The occurrence and continuance of any of the following events, unless waived in writing by the Lender, shall constitute a termination event (each, a "<u>Termination Event</u>"):

(a)    the date that is one hundred twenty (120) days after the Petition Date;

(b)    the Debtors shall have (i) filed a motion seeking to create, or (ii) created, incurred or suffered to exist, any postpetition liens or security interests that are *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens without the consent of the Lender;

(c)    the Debtors shall create, incur or suffer to exist any other claim which is *pari passu* with or senior to the Adequate Protection Superpriority Claim without the consent of the Lender;

(d) the Debtor shall support, commence, or join as an adverse party in any suit or other proceeding against the Lender relating to the Prepetition Secured Obligations or Prepetition Collateral;

(e) reversal, amendment, supplement, vacatur, or modification (without the express prior written consent of the Lender) of this Interim Order;

(f) dismissal of this Chapter 11 Case or conversion of this Chapter 11 Case to a chapter 7 case, or appointment of a trustee, receiver, interim receiver or manager, or appointment of a responsible officer or examiner with enlarged powers in these Chapter 11 Cases (having powers beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4));

(g) the Debtors fail to meet any of the Milestones; and

(h) the failure by the Debtors to perform, in any respect, any of the terms, provisions, conditions, or obligations under this Interim Order and such failure shall remain unremedied for more than five (5) business days after receipt by the Debtor of written notice thereof from the Lender.

5. <u>Rights and Remedies Upon Termination Event</u>. Upon the occurrence and during the continuance of any Termination Event and following the giving of not less than three (3) business days' prior written notice (the "<u>Termination Notice Period</u>") to the counsel to the Debtors, any Committee and the U.S. Trustee, any automatic stay otherwise applicable to the Lender is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the Lender to declare a termination, reduction or restriction on the ability of either Debtor to use any Cash Collateral (any such declaration hereunder shall be made in writing to the respective counsel to the Debtors, any Committee and the U.S. Trustee, and shall be referred to herein as a "<u>Termination Declaration</u>" and the date that is the earliest to occur of any such Termination Declaration being herein referred to as the "<u>Termination Declaration Date</u>"); <u>provided</u>, <u>however</u>, that during the Termination Notice Period, (i) the Debtors may continue to use Cash Collateral in the ordinary course of its business in accordance with the terms of this Interim Order; and (ii) the Debtors and any Committee may seek an emergency hearing before the Bankruptcy Court, and must provide

prompt notice of such hearing to the Lender and its counsel, to contest whether a Termination Event has occurred, and the Lender consents to either (y) an emergency hearing being set within the Termination Notice Period or (z) if the Lender requests, a continuance of such hearing until after the expiration of the Termination Notice Period, in which case the Debtors shall be authorized to continue use of Cash Collateral in the ordinary course of their businesses in accordance with this Interim Order until such hearing is held; provided further, however, that nothing in this paragraph shall be construed as limiting the Debtors' ability to request or the Court's authority to grant use of Cash Collateral pursuant to section 363 of the Bankruptcy Code.

6. Carve-Out. Subject to the terms and conditions contained in this paragraph, the Adequate Protection Liens and the Adequate Protection Superpriority Claim shall be subordinate to the following (collectively, the "Carve-Out"): all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate.  The Debtors intend to further request a Carve-Out, in connection with a Final Order, for ; , all accrued and unpaid fees and expenses incurred by persons or firms retained by the Debtor or the Committee (if appointed) pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code to the extent allowed by the Court at any time, whether by interim order, procedural order, final order, or otherwise (collectively, the "Professionals"), subject to the rights of the Lender to object to or conditions such Professional Carve-Out

7. Effect of Loft Vue and Vue Mac Stipulations (collectively, "Debtor Stipulations"). The Prepetition Secured Obligations and the Prepetition Liens are binding on the Debtors in all circumstances and for all purposes and are not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance by the Debtors; provided, however, that the allowance and treatment of the Prepayment Premiums shall be deferred to the

Final Order and subject to the rights of the Debtors and the Lender.  The Debtors are deemed to have irrevocably waived and relinquished any and all disputes, objections or challenges whatsoever regarding the Prepetition Secured Obligations, other than the Prepayment Premiums as provided herein, and the Prepetition Liens, including: (a) the validity, enforceability, extent, priority, or perfection of any mortgages, security interests, and liens of the Lender, including the Prepetition Liens; or (b) the validity, enforceability, allowability, priority, secured status, or amount of the Prepetition Secured Obligations, other than the Prepayment Premiums as provided herein. The Debtors agree that no Cash Collateral shall be used to investigate, bring, or support any action or proceeding described in the immediately preceding sentence. The Debtor Stipulations shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) in all circumstances and for all purposes but shall not be binding on any other parties in interest, including, without limitation, any Committee appointed or formed in this Chapter 11 Case and any other person or entity acting or seeking to act on behalf of the Debtors' estates. The Debtors and the Lender reserve all rights and arguments with respect to the validity, enforceability, and amount of the Prepayment Premiums, and nothing herein shall be construed as a waiver by either the Debtors or the Lender of any argument regarding the validity and enforceability of the Prepayment Premiums as a valid part of the Prepetition Secured Obligations.

8. <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection Liens and the Adequate Protection Superiority Claim; (b) permit the Debtors to perform such acts as the Lender may request in its reasonable discretion to assure the perfection

and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Lender under this Interim Order; and (d) authorize the Debtors to pay, and the Lender to retain and apply, payments made in accordance with the terms of this Interim Order (if any).

9. <u>No Waiver of Lender's Rights; Reservation of Rights</u>. Notwithstanding any provision in this Interim Order to the contrary, this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Lender's rights with respect to any person or entity or with respect to any other collateral owned or held by any person or entity. The rights of the Lender are expressly reserved and entry of this Interim Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of: (a) the Lender's rights under any of the Loft Vue or Vue Mac Loan Documents; (b) the Lender's rights to seek any other or supplemental relief in respect of the Debtors; (c) the Lender's rights to seek modification of the grant of adequate protection provided under this Interim Order so as to provide different or additional adequate protection at any time; or (d) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Lender. Without limiting the foregoing, by agreeing to the entry of this Interim Order, the Lender has not conceded or waived its right to assert that it is not adequately protected for the Debtors' continued use and retention of the Collateral, including the Cash Collateral, and the Lender has given notice of its intent to, and may, notwithstanding that no Termination Event has occurred or is continuing, file a motion for relief from the automatic stay of Section 362(a) of the Bankruptcy Code during the Specified Period (a "<u>Stay Relief Motion</u>"), The Stay Relief Motion, if filed, may be heard simultaneously with the Final Hearing on the Motion, or at such other time as may be set by the Court, and may be continued from time to time, or withdrawn without prejudice to refiling, at the discretion of the Lender.

10. <u>No Liability to Third Parties</u>. By reason of permitting the Debtors to use Cash Collateral under the terms set forth herein or in taking any other actions authorized by this Interim Order, the Lender (a) shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of the Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, or any similar Federal or state statute), and (b) shall not owe any fiduciary duty to the Debtors, their creditors, or their estates, and shall not be party to or be deemed to be party to a joint venture or partnership with the Debtors. Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Lender of any liability for any claims arising from the prepetition or postpetition activities of the Debtors.

11. <u>Binding Effect of Interim Order</u>. Immediately upon entry by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Lender, and the respective successors and assigns of each of the foregoing, including any chapter 7 or chapter 11 trustee or other fiduciary hereafter appointed or elected for the estate of the Debtors or with respect to the property of the estates of the Debtors in these Chapter 11 Cases, any Successor Cases, or upon dismissal of these Chapter 11 Cases or any Successor Cases.

12. <u>No Modification of Interim Order</u>. Notwithstanding any reversal, modification, vacation or stay of this Interim Order, any use of Cash Collateral or Adequate Protection Obligations incurred by the Debtors to the Lender prior to the actual receipt of written notice by the Lender of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order.

5222102.1

13. <u>No Third-Party Rights</u>. Except as explicitly provided for herein, this Interim Order shall not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

14. <u>Final Hearing</u>. A Final Hearing on the Motion shall be held on _____ _____, 2021, at _____ a.m./p.m prevailing Central Time.  Any objections or responses to entry of a Final Order on the Motion shall be filed on or before 4:00 p.m. prevailing Central Time on   , 2021. Any responses or objections to the Motion and entry of relief requested in the Motion on a final basis must: (a) be made in writing; (b) state with particularity the grounds therefor; (c) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (d) be filed with the United States Bankruptcy Court for the Southern District of Texas; and (e) be served upon (i) the U.S. Trustee, (ii) proposed counsel for the Debtor (Tucker Ellis LLP, 233 S. Wacker Dr., Suite 6950, Chicago, Illinois 60606 (Attn:  Thomas R. Fawkes, thomas.fawkes@tuckerellis.com)) and Munsch Hardt Kopf & Harr, P.C., 500 N. Akard St., Suite 3800, Dallas, Texas 75201 (Attn:  Thomas D. Berghman, tberghman@munsch.com); and (iii) counsel to the Lender:  Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 1301 McKinney Street, Suite 3700, Houston, Texas 77010 (Attn:  Daniel J. Ferretti, dferretti@bakerdonelson.com).  In the event no objections to entry of the Final Order on the Motion are timely received, the Court may enter a Final Order without a Final Hearing.

15. <u>Retention of Jurisdiction</u>. The Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Interim Order.

Dated: July __, 2021

_____
United States Bankruptcy Judge

5222102.1