**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| NB LOFT VUE, DST, *ET AL.*, | § Case No. 21-32292 |
| | § |
| Debtors. | § (Jointly Administered) |
| | § |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION**
**FINANCING AND (II) GRANTING RELATED RELIEF**

Upon the emergency motion (the "Motion")[1] of the above captioned debtors and debtors in possession, NB Loft Vue, DST ("Loft Vue") and NB Vue Mac, DST ("Vue Mac," and together with Loft Vue, the "Debtors"), seeking entry of an order (this "Final DIP Order") pursuant to sections 105, 363, 364, 503, and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1, 4002-1, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules") *inter alia*:

(i) authorizing the Debtors to enter into a loan agreement (the "DIP Agreement," attached hereto as Exhibit A), in which Loft Vue will receive an unsecured loan in the principal amount of up to $162,095.75, and Vue Mac will receive an unsecured loan in the principal amount of up to $300,357.46 (the "DIP Financing");

(ii) authorizing the Debtors to execute and deliver the DIP Agreement and any other agreements, instruments, and other loan documents and/or documents related thereto (as amended,

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion, and/or DIP Agreement.

restated, supplemented, waived, and/or modified from time to time) and to perform such other acts as may be necessary or desirable in connection with the DIP Agreement;

(iii)    approving the DIP Agreement and all obligations owing thereunder;

(iv)    authorizing the Debtors to pay the principal, interest, fees, expenses, and other amounts payable under the DIP Agreement as such become earned, due, and payable, all to the extent provided in, and in accordance with, the DIP Agreement; and

(v)    granting related relief.

The Court having considered the Motion and the DIP Agreement and the evidence submitted and argument made at the August 25, 2021 interim hearing on the Motion, an order approving the Motion on an interim basis having been entered on August 25, 2021 (the "Interim Order"); and no objections having been filed to the approval of a Final DIP Order, and a final hearing having been held on September 16, 2021 (the "Final Hearing"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and it appearing that approval of the final relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties in interest, and is essential for the continued operation of the Debtors' businesses and the maximization of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

---

[2]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the

A. **Petition Date.** On July 6, 2021 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas (the "Court").

B. **Debtors in Possession**. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C. **Jurisdiction and Venue.** This Court has jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Venue for the Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. **Committee Formation.** As of the date hereof, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

E. **Notice.** Notice of the Motion and the Final Hearing have been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

F. **Findings Regarding Postpetition Financing.**

a. *Need for Postpetition Financing.* The Debtors have demonstrated a need for immediate access to postpetition financing, in order to maintain the value of their estates while they identify either a purchaser of their assets or a replacement lender. Without postpetition financing, the Debtors will be unable to satisfy their obligations to tenants, suppliers, and vendors that arise from such ordinary course operations, as well as to pay the expenses of these chapter 11 cases, which will preserve and maximize the value of their estates. Ultimately, immediate access

---

extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

to the DIP Financing will allow the Debtors to avoid irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders.

b.   *Alternative Sources of Financing Are Not Readily Available.*   The Debtors do not have alternative sources of financing readily available with terms better than those included in the DIP Agreement.   Given the limited time in which the Debtors needed to obtain alternative financing after their agreement to terminate use of Fannie Mae's cash collateral on August 25, 2021, coupled with the fact that Fannie Mae has security interests and liens in substantially all of the Debtors' assets, it is highly unlikely that the Debtors could have secured attractive financing at this time from a third-party.

c.   *Business Judgment and Good Faith Pursuant to Section 364.*   The terms and conditions of the DIP Agreement are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for unsecured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The terms and conditions of the DIP Agreement were negotiated in good faith and at arms' length among the Debtors and the proposed debtor-in-possession lender, Nelson Partners, LLC ("DIP Lender") with the assistance and counsel of their respective advisors. Use of the DIP Financing to be extended under the DIP Agreement shall be deemed to have been made or extended in good faith by the DIP Lender within the meaning of section 364 of the Bankruptcy Code.

G.   **Immediate Entry**. Sufficient cause exists for immediate entry of this Final DIP order pursuant to Bankruptcy Rule 4001.

H.   **Final Hearing**. The Debtors have made reasonable efforts to afford the best notice possible under the circumstances to parties-in-interest of the Final Hearing.

Based upon the foregoing findings and conclusions, the Motion, the DIP Agreement, and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      Final Financing Approved.  The DIP Financing is hereby authorized and approved, subject to the terms set forth in the DIP Agreement and this Final DIP Order.  Any objections to this Final DIP Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.

2.      Authorization of the DIP Agreement. The DIP Agreement is hereby approved. The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Agreement and to incur and to perform the obligations in accordance with, and subject to, the terms of this Final DIP Order and the DIP Agreement, and to deliver all instruments, certificates, agreements, and documents that may be required or necessary for the performance by the Debtors under the DIP Agreement.

3.      Authorization to Borrow.  To prevent immediate and irreparable harm to the Debtors' estates, from entry of this Final DIP Order, and subject to the terms, conditions, limitations (as applicable) set forth in the DIP Agreement and this Final DIP Order, the Debtors are hereby authorized to enter into the DIP Agreement, in which Loft Vue will receive an unsecured loan in the principal amount of up to $162,095.75, and Vue Mac will receive an unsecured loan in the principal amount of up to $300,357.46.

4.      Administrative Expense Treatment.  DIP Lender shall be entitled, subject to entry of a Final Order, to an administrative expense claim for all amounts actually advanced, plus accrued interest, pursuant to section 503(b)(1)(A) of the Bankruptcy Code (the "Lender

Administrative Expense Claim"). The Lender Administrative Expense Claim shall be subordinated to: (i) the allowed secured claims and allowed adequate protection liens of Fannie Mae; and (ii) the liens and allowed secured claims of Harris County and Tarrant County.

5.      DIP Obligations. The DIP Agreement and this Final DIP Order shall constitute and evidence the validity and binding effect of the obligations set forth in the DIP Agreement, which shall be enforceable against the Debtors, their estates, and any successor thereto, including any trustee appointed in these Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon conversion of any of these Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). Upon entry of this Final DIP Order, all obligations under the DIP Agreement will take effect. For the avoidance of doubt, all repayment obligations of each of the Debtors on account of the DIP Agreement shall be subordinate to the allowed secured claims of Fannie Mae and any allowed Adequate Protection Superpriority Claim of Fannie Mae, as that term is defined in the First and Second Interim Cash Collateral Orders entered in these cases. The Court further orders that Nelson Partners LLC must fund amounts to the Debtors in its capacity as DIP Lender, consistent with applicable draw requests by the Debtors made consistently with the attached budgets.

6.      Amendment to the DIP Agreement. The DIP Agreement may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if the amendment, modification, or supplement is (a) immaterial or non-adverse to the Debtors and their estates and (b) in accordance with the DIP Agreement. In the case of a material amendment, modification, waiver, or supplement to the DIP Agreement that is adverse to the Debtors, their estates or stakeholders, the Debtors shall file a motion with the Court (which may be brought on

5291289.1

an emergency basis) for approval of such material amendment and shall provide notice of such motion to all parties entitled to receive electronic service in these cases.

7.    <u>DIP Events of Default</u>.  The occurrence of any default events provided for in the DIP Agreement, unless waived by the DIP Lender in advance, in writing, and in accordance with the terms of the DIP Agreement, shall constitute an event of default (the "<u>DIP Default Events</u>").

8.    <u>Rights and Remedies Upon Default</u>.  The DIP Lender shall have the rights and remedies upon any DIP Default Event, as provided for in the DIP Agreement.

9.    <u>Binding Effect of Final DIP Order</u>.  Immediately upon execution by this Court, the terms and provisions of this Final DIP Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Lender, and all other creditors of any of the Debtors, a Committee (if appointed), or any other court appointed committee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

10.    <u>Survival</u>. The provisions of this Final DIP Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.

11.    <u>No Third-Party Rights</u>. Except as explicitly provided for herein, this Final DIP Order shall not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

12.    <u>Retention of Jurisdiction.</u> The Court retains jurisdiction to resolve any disputes or controversies arising from or related to this Final DIP Order.

Signed: September ___, 2021
Houston, Texas

_____
Marvin Isgur
United States Bankruptcy Judge

Exhibit "A"

## LOAN AGREEMENT AND PROMISSORY NOTE

THIS LOAN AGREEMENT AND PROMISSORY NOTE (the "Note"), is made this 25th day of August, 2021 (the "EFFECTIVE DATE"), by and among NELSON PARTNERS, LLC (hereinafter, known as "Lender"), on one hand, and NB LOFT VUE, DST (hereinafter, known as "Loft Vue") and NB VUE MAC, DST (hereinafter, known as "Vue Mac" and together with Loft Vue, the "Borrowers"), on the other hand. Borrowers and Lender shall collectively be known herein as the "Parties." In determining the rights and duties of the Parties under this Note, the entire document must be read as a whole.

## PROMISSORY NOTE

FOR VALUE RECEIVED: (i) Loft Vue promises to repay to the order of Lender, the sum of One Hundred Sixty-Two Thousand Ninety-Five Dollars and 75 Cents ($162,095.75) together with interest thereon at the current prime rate plus two percent (2%) per annum; and (ii) Vue Mac promises to repay to the order of Lender, the sum of Three Hundred Thousand Fifty-Seven Dollars and 46 Cents ($300,357.46) together with interest thereon at the current prime rate plus two percent (2%) per annum. For the avoidance of doubt, Loft Vue shall not have any liability for the obligations of Vue Mac hereunder, and Vue Mac shall not have any liability for the obligations of Loft Vue hereunder.

## AGREEMENT

Each of the Borrowers and Lender, hereby further set forth their rights and obligations to one another under this Loan Agreement and Promissory Note and agree to be legally bound as follows:

**A. Principal Loan Amount.** Subject to the terms and conditions set forth in this Loan Agreement, LENDER agrees to advance: (i) Loft Vue up to the principal sum of $162,095.75 (the "Loft Vue Loan"); and (ii) Vue Mac up to the principal sum of $300,357.46 (the "Vue Mac Loan," and together with the Loft Vue Loan, the "Loans"). One or more principal advances of the Loan amounts may be made, subject to operating and administrative expense budgets submitted by each Borrower to Lender and approved by Lender.

**B. Loan Repayment Terms.** Lender is to defer all payments of principal and interest from each of the Borrowers until the later of:

> 1) thirty (30) days after the confirmation of a chapter 11 plan of reorganization (a "Plan") in the jointly administered chapter 11 cases of Loft Vue and Vue Mac [Lead Case No. 21-32292]; or

> 2) an order entered by the United States Bankruptcy Court for the Southern District of Texas (the "Court") authorizing the payments provided for herein.

Upon the satisfaction of one of the foregoing conditions, each of the Borrowers shall repay their respective Loans in twelve (12) equal monthly installments of principal and interest, or upon such

other terms as subsequently agreed to by the Parties or as otherwise set forth in a Plan or order of the Court.

**C. Method of Loan Payment.** Each of the Borrowers shall make all payments called for under this Note by sending check, wire, or other negotiable instrument made payable to Lender.

**D. Security.** Each of the Loans shall be unsecured, and the repayment thereof shall be in all respects subordinated to repayment of any allowed secured claims of Fannie Mae in each of the Borrower's chapter 11 cases. Lender shall be entitled, subject to approval of the Court, to an administrative expense claim for all amounts actually advanced, plus accrued interest, pursuant to section 503(b)(1)(A) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq.

**E. Default.** The occurrence of any of the following events shall constitute a Default by the applicable Borrower of the terms of this Note, subject to the cure provisions below:

> **1)** A Borrower's failure to pay any amount due as principal or interest on the date required under this Note.

> **2)** A Borrower's chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code, or a trustee is otherwise appointed in a Borrower's chapter 11 case.

For the avoidance of doubt, each of the Loft Vue Loan and Vue Mac Loan are not cross-defaulted, such that a Default by one Borrower shall not constitute a Default of the other Borrower.

**F. Additional Provisions Regarding Default.**

> **1)** Address to which Lender is to give Borrowers written notice of Default:

> Nelson Partners, LLC
> 180 Avenida La Pata, 2nd Floor
> San Clemente, CA 92673

If a Borrower gives written notice to Lender that a different address shall be used, Lender shall use that address for giving notice of Default (or any other notice called for herein) to such Borrower.

**2) Cure of Default.** Upon the occurrence of a Default, Lender shall give the applicable Borrower a written notice of Ddefault. Mailing of written notice by Lender to Borrower via U.S. Postal Service Certified Mail shall constitute prima facie evidence of delivery. The applicable Borrower shall have fifteen (15) days after receipt of written notice of Default from Lender to cure said default. In the case of Default due solely to a Borrower's failure to make timely payment as called for in this Note, a Borrower may cure the Default by making full payment of any principal and accrued interest whose payment to Lender is overdue under the loan agreement and, also, the late-payment penalty described below.

2

**3) Penalty for Late Payment.** There shall also be imposed upon a Defaulting Borrower a 2% penalty for any late payment computed upon the amount of any principal and accrued interest whose payment to Lender is overdue under this loan agreement and for which Lender has delivered a notice of default to a Borrower.

**4) Attorneys' Fees and Costs.** Should any Party materially breach this agreement, the non-breaching party shall be entitled to payment of its reasonable attorneys' fees and out-of-pocket costs which in any way relate to, or were precipitated by, the breach of this agreement. The term "out-of-pocket costs", as used herein, shall not include lost profits.

**G. Corporate Authority.** Each Party hereby represents and warrants that all steps and actions have been taken under the entity's governing instruments to authorize the entry into this Note. Breach of any representation contained in this paragraph is considered a material breach of the Note.

**H. Integration.** This Note, including the attachments mentioned in the body as incorporated by reference, sets forth the entire agreement between the Parties with regard to the subject matter hereof. All prior agreements, representations and warranties, express or implied, oral or written, with respect to the subject matter hereof, are superseded by this agreement. This is an integrated agreement.

**I. Severability.** In the event any provision of this Note is deemed to be void, invalid, or unenforceable, that provision shall be severed from the remainder of this Note so as not to cause the invalidity or unenforceability of the remainder of this Note. All remaining provisions of this Note shall then continue in full force and effect. If any provision shall be deemed invalid due to its scope or breadth, such provision shall be deemed valid to the extent of the scope and breadth permitted by law.

**J. Modification.** Except as otherwise provided in this document, this agreement may be modified, superseded, or voided only upon the written and signed agreement of the Parties. Further, the physical destruction or loss of this document shall not be construed as a modification or termination of the agreement contained herein.

**K. Exclusive Jurisdiction for Suit in Case of Breach.** The Parties, by entering into this agreement, submit to the exclusive jurisdiction of the Court for adjudication of any disputes and/or claims between the Parties under this agreement.

**L. State Law.** This Agreement shall be interpreted under, and governed by, the laws of the State of California.

**M. Condition Precedent.** Approval of this Note by the Court shall be a condition precedent to Lender's obligation to make the Loans set forth herein, and each Borrower's repayment obligations hereunder.

IN WITNESS WHEREOF and acknowledging acceptance and agreement of the foregoing, BORROWERS and LENDER affix their signatures hereto.

Borrowers:

**NB LOFT VUE, DST**

By: _____

Name:

Title:

**NB VUE MAC, DST**

By: _____

Name:

Title:

Lender:

**NELSON PARTNERS, LLC**

By: _____

Name:

Title:

4