United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 17, 2021

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 21-32292** |
| | § | |
| **NB LOFT VUE, DST**, *et al.* | § | **Chapter 11** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.** | § | |

### STIPULATION RESOLVING OUTSTANDING MOTIONS

This Stipulation (the "Stipulation") is entered into by and between NB Loft Vue, DST ("Loft Vue"), NB Vue Mac, DST ("Vue Mac" and collectively with Loft Vue, the "Debtors"), Chapter 11 Trustee Randy W. Williams (the "Trustee") and Fannie Mae (collectively with the Trustee and Debtors, the "Parties").

### RECITALS

A.     On July 6, 2021 (the "Petition Date"), the Debtors both filed voluntary petitions for relief under Chapter 11 of Title 11 of the U.S. Code (11 U.S.C. §§ 101 *et seq.*, herein after referred to as the "Bankruptcy Code").

B.     The Debtors are single asset real estate entities.  Loft Vue owns certain real property, improvements, and related personal property commonly known as The Loft Vue Apartments located at 3125 McCart Avenue and 3120 Forrest Park Blvd., Fort Worth, Texas 76110 (collectively, the "Loft Vue Property").  Vue Mac owns certain real property, improvements, and related personal property commonly known as The Vue at MacGregor Apartments located at 4460 S. MacGregor Way, Houston, Texas 77021 (collectively, the "Vue Mac Property").

C.     The Loft Vue Property and the Vue Mac Property, and their rents, income, accounts, bank accounts, and cash and other proceeds of the use and occupancy of the respective

properties (collectively, the "Rents") are subject to liens and security interests in favor of Fannie Mae.

D.      On July 20, 2021, this Court entered an Order for joint administration of the Debtors' bankruptcy cases (Doc. No. 17).

E.      On November 10, 2021, this Court entered an Order granting Fannie Mae partial relief from the automatic stay (Doc. No. 148), in which the Court, among other relief, (i) granted Fannie Mae relief from the automatic stay to foreclose its interest in the Vue Mac Property pursuant to applicable state law and (ii) ordered the appointment of a chapter 11 trustee for each of the Debtors' estates.  Simultaneously, the Court separately ordered appointment of a chapter 11 trustee (Doc. No. 147).

F.      On November 16, 2021, the U.S. Trustee appointed the Trustee as chapter 11 trustee for both Debtors' estates (Doc. No. 151).

G.      On December 6, 2021, the Chapter 11 Trustee filed the Chapter 11 Trustee's Emergency Motion to Abandon the Real Property, and Related Personal Property and Rents, of the Debtors (Doc. 160) (the "Motion to Abandon") and the Chapter 11 Trustee's Motion to Convert Cases to Chapter 7 (Doc. 161) (the "Motion to Convert").

H.      On December 13, 2021, the Debtors filed the Debtors' Objection to Chapter 11 Trustee's Emergency Motion to Abandon and Convert Cases to Chapter 7; and Motion for Reconsideration of Trustee Order and Stay Order (Doc. 168) (the "Objection and Motion to Reconsider" and collectively with the Motion to Abandon and Motion to Convert, the "Outstanding Motions").

I.      The Parties have agreed to resolve the Outstanding Motions according to the following agreement.

NOW, THEREFORE, after good-faith, arms-length negotiations, in consideration of the foregoing, it is hereby stipulated and agreed as follows:

A.     **Vue Mac**

1.     Vue Mac agrees to turn over the Vue Mac Cash Collateral, including future Rents as collected, to the Trustee. The Trustee will segregate and separately account for the Vue Mac Cash Collateral.

2.     The Trustee agrees to hire Tarantino Properties, Inc. (the "Property Manager") to manage the Vue Mac Property.

3.     Vue Mac agrees to promptly turn over to the Property Manager all books, records, security deposits, escrows, leases, contracts, computers and access to all financial and other information relating to the Vue Mac Collateral and Vue Mac Property and the operations thereon maintained in any form including electronically, including information regarding computers and software programs utilized by Vue Mac and all administrator access codes thereto in order to give the Property Manager full access to all such information relating to the Vue Mac Collateral and the Vue Mac Property and the operations thereon.

4.     Nelson Partners, LLC ("Nelson") shall be responsible for all tax reporting for Vue Mac for tax years 2019-2022, if applicable, including issuing 1099 forms to investors and filing any Texas State returns.

5.     Fannie Mae and the Trustee agree that the Trustee may use Vue Mac Cash Collateral, until Fannie Mae's foreclosure of the Vue Mac Property, in accordance with the following procedures ("Vue Mac Cash Collateral Procedures"):

      a.     For any expense other than an Emergency Expense defined herein, the Trustee will provide, via email to Fannie Mae's counsel, a request to use Vue Mac Cash

Collateral to pay such expense (an "Ordinary Expense Request"). Ordinary Expense Requests may be grouped together in a single request email and shall contain (i) the invoice or other documentation supporting such expense and (ii) the recommendation of the Trustee's property manager with respect to paying such expense. If Fannie Mae does not respond by 5:00 p.m. on the date that is two business days after receipt by Fannie Mae's counsel of such Ordinary Expense Request (the "Ordinary Expense Objection Deadline"), then the Ordinary Expense Request shall be deemed approved, and the Trustee shall be authorized to pay the expenses described in such Ordinary Expense Request. If Fannie Mae, through counsel, objects to such request prior to the Ordinary Expense Objection Deadline, by written email to the Trustee and his counsel, then Fannie Mae and the Trustee will confer for not less than three business days to attempt to resolve the objection on a consensual basis. Thereafter, if the parties are unable to resolve such objection, the Trustee may pay any portion of the Ordinary Expense Request that is not contested and may seek emergency relief before the Court with respect to the expenses to which Fannie Mae objects.

b. If the Trustee determines that an expense is necessary for the operation of the Vue Mac Property or the health, safety and welfare of the tenants at the Vue Mac Property, and exigent circumstances exist that require payment in less than two business days of such expense (such expenses are hereinafter defined as "Emergency Expenses"), the Trustee will provide, via email to Fannie Mae's counsel, a request to use Vue Mac Cash Collateral to pay such Emergency Expense and specifically denote that such expense is an Emergency Expense (an

"Emergency Expense Request").  An Emergency Expense Request may not be grouped together with an Ordinary Expense Request.  Each Emergency Expense Request shall contain (i) the invoice or other documentation supporting such expense, (ii) the recommendation of the Trustee's property manager with respect to paying such expense, and (iii) an explanation why the Trustee believes the requested expenses are Emergency Expenses.  If Fannie Mae does not respond by 2:00 p.m. on the date that is one business day after receipt by Fannie Mae's counsel of such Emergency Expense Request (the "Emergency Expense Objection Deadline"), then the Emergency Expense Request shall be deemed approved, and the Trustee shall be authorized to pay the expenses described in such Emergency Expense Request.  If Fannie Mae, through counsel, objects to such request prior to the Emergency Expense Objection Deadline, by written email to the Trustee and his counsel, then Fannie Mae and the Trustee will confer for not less than one business day to attempt to resolve the objection on a consensual basis.  Thereafter, if the parties are unable to resolve such objection, the Trustee may pay any portion of the Emergency Expense Request that is not contested and may seek emergency relief before the Court with respect to the expenses to which Fannie Mae objects.

6.     A foreclosure sale of the Vue Mac Property by non-judicial substitute trustee's sale (the "Foreclosure") is currently scheduled for January 4, 2022.

7.     To the extent the Vue Mac Cash Collateral is not exhausted prior to the Foreclosure, Fannie Mae's claim to the Vue Mac Collateral shall be subordinate to the following carve-outs (the "Vue Mac Carveout"): (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate;

(ii) compensation of the Trustee pursuant to section 326 of the Bankruptcy Code, in an amount up to $20,000.00; and (iii) the reasonable accrued and unpaid fees and expenses incurred by persons or firms retained by the Trustee, pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code, in an amount up to $15,000.00, provided that the Trustee and its professionals shall be required to apply for compensation, fees and expenses pursuant to Sections 330 and, to the extent such fees are due to exigent circumstances, 506(c) (with Fannie Mae retaining the right to object to and contest such applications). The Trustee further agrees to waive the right to surcharge the Collateral under Section 506(c) only to the extent of (i) any expenses approved by Fannie Mae for payment pursuant to the Payment Procedures, and (ii) any compensation for a broker retained to sell the Vue Mac Property. All other Section 506(c) rights of the Trustee are preserved.

8.     The Trustee may hire an accountant as a professional to review and amend as necessary the existing monthly operating reports and future monthly operating reports, and counsel to assist the Trustee with his duties in the Vue Mac Case, and such professionals may be paid from the Vue Mac Carveout as provided above.

9.     After the Foreclosure and within a reasonable time after reconciliation of the Vue Mac books and records with respect to any expenses for the period between the Trustee's appointment and Foreclosure, the Trustee agrees to abandon the Cash Collateral to Fannie Mae, subject to the Carveout.

10.     To the extent Vue Mac Cash Collateral is insufficient to fund the necessary operations of the Vue Mac Property, Fannie Mae agrees to advance funds, in accordance with the Vue Mac Cash Collateral Procedures, for the payment of the expenses of such operations, through the date of Foreclosure.

11.     Upon completion of the Foreclosure, the Debtors and Fannie Mae will not contest a Motion by the Trustee to convert Vue Mac's case to a case under chapter 7.

**B.**     **Loft Vue**

12.     Loft Vue agrees to turn over the Loft Vue Cash Collateral, including future Rents as collected, to the Trustee.  The Trustee will segregate and separately account for the Loft Vue Cash Collateral.

13.     The Trustee agrees to hire the Property Manager to manage Loft Vue's business. Loft Vue agrees to promptly turn over to the Property Manager all books, records, security deposits, escrows, leases, contracts, computers and access to all financial and other information relating to the Loft Vue Collateral and Loft Vue Property and the operations thereon maintained in any form including electronically, including information regarding computers and software programs utilized by Loft Vue and all administrator access codes thereto in order to give the Property Manager full access to all such information relating to the Loft Vue Collateral and the Loft Vue Property and the operations thereon.

14.     The Trustee will commence efforts to market the Loft Vue Property Collateral for sale by auction, and, in connection with such efforts, comply with the terms of the attached proposed cash collateral order (the "Loft Vue Cash Collateral Order").

15.     In the event of a credit bid by Fannie Mae, Nelson agrees to pay the fees and any compensation of any broker retained by the Trustee. In the event of a cash sale, the buyer will pay the broker's fees and compensation.  Other customary closing costs associated with the sale, and responsibility for 2021 real estate taxes, will be borne by the buyer (whether the buyer is Fannie Mae or a third party).

16.     Nelson shall be responsible for all tax reporting for Loft Vue for tax years 2019-2022, if applicable, including issuing 1099 forms to investors and filing any Texas State returns.

17.     The Trustee shall seek authority to use the Loft Vue Cash Collateral in accordance with the terms of the Loft Vue Cash Collateral Order.  The Loft Vue Cash Collateral order will include the following carve-outs (the "Loft Vue Carveout"): (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate; (ii) compensation of the Trustee pursuant to section 326 of the Bankruptcy Code, in an amount up to $20,000.00; (iii) the reasonable accrued and unpaid fees and expenses incurred by persons or firms retained by the Trustee (collectively, the "Professionals") except for any broker retained to sell the Collateral, pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code, in an amount up to $60,000.00, provided that the Trustee and its Professionals shall be required to apply for compensation, fees and expenses pursuant to Sections 330 and, to the extent such fees are due to exigent circumstances, 506(c) (with the Lender retaining the right to object to and contest such applications); and (iv) an amount equal to $20,000.00, which shall be set aside to pay to general unsecured creditors pursuant to a process to be determined by the Trustee (the "Unsecured Creditor Carveout").  Trustee further agrees to waive the right to surcharge the Collateral under Section 506(c) to the extent of (i) any expenses approved by Fannie Mae for payment pursuant to the Payment Procedures in the Loft Vue Cash Collateral Order, and (ii) any compensation for a broker retained to sell the Loft Vue Property. The Trustee, Fannie Mae and the Debtors further waive any right to seek recovery of administrative expenses, professional fees, or any other amounts from the Unsecured Creditor Carveout.

18.     The Trustee may hire an accountant and counsel to assist the Trustee with his duties in the Loft Vue Case, and such professionals may be paid from the Loft Vue Carveout as provided in the Loft Vue Cash Collateral Order.

19.     To the extent Loft Vue Cash Collateral is insufficient to fund the necessary operations of the Loft Vue Property, Nelson agrees to advance funds for the payment of the expenses of such operations, through the date the Loft Vue Property is sold.

**C.     <u>General</u>**

20.     The Trustee agrees to withdraw his Motion to Abandon and Motion to Convert.

21.     The Debtors agree to withdraw their Objection and Motion to Reconsider.

22.     This Stipulation and the Loft Vue Cash Collateral Order together contain the entire agreement between the Parties as to its subject matter and supersedes any and all prior agreements and undertakings between the Parties relating thereto.

23.     This Stipulation may not be modified other than by a signed writing executed by the Parties.

24.     Each person who executes this Stipulation represents that he or she is duly authorized to do so on behalf of the respective Party and that each Party has full knowledge and has consented to the Stipulation.

25.     This Stipulation may be executed in counterparts, each of which will be deemed an original but all of which together constitute one and the same instrument, and it constitutes sufficient proof of the Stipulation to present any copy, copies, or faxes signed by the Parties to be charged.

26.    This Stipulation shall be binding upon the Parties' successors, agents, assigns (including bankruptcy trustees and estate representatives), and any parent, subsidiary or affiliated entity of the Parties.

27.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of the Stipulation, and the Parties hereby consent to such jurisdiction to resolve any disputes or controversies arising from or related to the Stipulation.

IT IS SO ORDERED

Signed: December 17, 2021

_____
Marvin Isgur
United States Bankruptcy Judge

AGREED TO THIS 16TH DAY OF DECEMBER, 2021.

By: */s/  Daniel J. Ferretti*
    DANIEL J. FERRETTI (SBT 24096066)
    Baker Donelson Bearman Caldwell & Berkowitz PC
    1301 McKinney Street, Suite 3700
    Houston, Texas   77010
    Telephone:  713-650-9700
    Facsimile:   713-650-9701
    Email: dferretti@bakerdonelson.com

    COUNSEL TO FANNIE MAE

By: */s/  Thomas R. Fawkes*
    THOMAS R. FAWKES (*pro hac vice*)
    Tucker Ellis LLP
    233 South Wacker Drive, Suite 6950
    Chicago, IL  60606
    Telephone: (312) 256-9425
    Facsimile: (312) 624-6309
    thomas.fawkes@tuckerellis.com

    And

    Thomas Daniel Berghman (SBT 24082683)
    Munsch Hardt Kopf and Harr
    500 North Akard Street
    Suite 3800
    Dallas, TX 75201
    Telephone: (214) 855-7500
    Facsimile: (214) 978-4375
    tberghman@munsch.com

    COUNSEL TO DEBTORS

By: */s/  Bruce J. Ruzinsky*
    Bruce J. Ruzinsky
    Jackson Walker L.L.P.
    1401 McKinney, Suite 1900
    Houston, Texas 77010
    Telephone: (713) 752-4204
    Facsimile: (713) 308-4155
    bruzinsky@jw.com

    PROPOSED COUNSEL TO TRUSTEE